CITY OF TRENTON v TRENTON FIRE FIGHTERS UNION, LOCAL 2701, INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS

Docket No. 84908. Submitted November 5, 1987, at Detroit. Decided February 2, 1988. Leave to appeal applied for.

On September 22, 1982, Trenton Fire Fighters Union, Local 2701, International Association of Fire Fighters (respondent) filed an unfair labor practice charge against the City of Trenton (petitioner) alleging that on or about September 17, 1982, petitioner had violated its duty to bargain with respondent by unilaterally implementing a new policy manual which changed minimum manpower requirements. The previous policy manual provided for procedures to be followed when the fire department was at its "minimum manpower (8 men)." Respondent had also sought a clause in its latest collective bargaining agreement guaranteeing an eight-man minimum manpower requirement, but had dropped the demand for that clause during arbitration. Petitioner's fire chief subsequently rewrote the policy manual, eliminating the reference to an eight-man minimum force. Respondent filed a grievance under the collective bargaining agreement protesting the change, but the grievance was denied. The arbitrator ruled that the policy manual was not part of the collective bargaining agreement and that the collective bargaining agreement reserved to petitioner the right to control "operations." On March 23, 1984, a Michigan Employment Relations Commission hearing officer denied respondent's unfair labor practice charge. Respondent filed exceptions to that decision, noting that where an employee's workload and safety are affected, the employer must bargain because working conditions are a mandatory bargaining subject. The MERC then ruled that manpower requirements which affect safety are subject to arbitration because safety practices are conditions of employment and, therefore, mandatory bargaining subjects and that petitioner had violated its duty to negotiate with respondent to

REFERENCES

Am Jur 2d, Labor and Labor Relations §§ 83, 1553, 1764 *et seq.*; 2432.

Validity and construction of statutes or ordinances providing for arbitration of labor disputes involving public employees. 68 ALR3d 885.

impasse over this mandatory bargaining subject. The MERC ordered petitioner to restore the old policy until it satisfied its obligation to bargain with respondent. Respondent then filed a motion for rehearing or reconsideration asking the MERC to award back pay to individuals who had been financially harmed by petitioner's action. The MERC granted back pay to the affected employees. Petitioner then filed its petition for review by the Court of Appeals.

The Court of Appeals *held:*

1. Where minimum manpower issues are inextricably intertwined with safety issues, they become mandatory bargaining subjects.

2. The MERC's conclusion that the reduced minimum manpower requirement would affect safety is supported by competent, material, and substantial evidence and therefore is conclusive.

3. The MERC's finding that petitioner had a long-standing policy regarding the eight-man minimum manpower requirement is affirmed, as is its decision that respondent did not waive the right to bargain on this issue when it dropped its demand for arbitration on this issue.

4. The MERC properly exercised its discretion to modify its order to include back pay.

5. The MERC's finding that the back pay award would not be speculative because petitioner maintained a list from which employees would be called in was based on material, competent and substantial evidence on the whole record and, therefore, is conclusive.

6. The MERC properly reviewed the minimum manpower issue since it involved statutory interpretation.

Affirmed.

1. LABOR RELATIONS — FIRE DEPARTMENTS — MINIMUM MANPOWER REQUIREMENTS — COLLECTIVE BARGAINING.

A reduction in the minimum manpower requirement for a city's fire department is a subject of mandatory collective bargaining where reduction of the work force is inextricably intertwined with the safety of the fire fighters (MCL 423.215; MSA 17.455[15]).

2. LABOR RELATIONS — EMPLOYMENT RELATIONS COMMISSION — MODIFICATION OF FINDINGS OR ORDERS.

The Employment Relations Commission, upon reasonable notice and in such manner as it deems proper, may modify in whole or in part any finding or order made or issued by it before the

record in the case has been filed in a court (MCL 423.216[c]; MSA 17.455[16][c]; 1979 AC, R 423.468[2]).

3. LABOR RELATIONS — ARBITRATION — EMPLOYMENT RELATIONS COMMISSION — STATUTORY CLAIMS.

The Employment Relations Commission is prohibited from deferring the resolution of a statutory claim under the public employment relations act to an arbitrator (MCL 423.216; MSA 17.455[16]).

*Fitzgerald, Hodgman, Rutledge, Cawthorne, King & Manion, P.C.* (by *Wallace G. Long*), for appellant.

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *George H. Kruszewski*), for appellee.

Before: J. H. GILLIS, P.J., and D. E. HOLBROOK, JR., and S. N. ANDREWS,* JJ.

PER CURIAM. The City of Trenton (petitioner) appeals as of right from the Michigan Employment Relations Commission order finding that it had committed an unfair labor practice by unilaterally altering its minimum manpower requirements. Petitioner also appeals as of right from the MERC order granting a request for rehearing by the Trenton Fire Fighters Union, Local 2701, International Association of Fire Fighters (respondent), and ordering petitioner to provide back pay to employees adversely affected by its earlier decision. We affirm.

On September 22, 1982, respondent filed an unfair labor practice charge against petitioner, alleging that on or about September 17, 1982, petitioner had violated its duty to bargain with respondent by unilaterally implementing a new policy manual which changed minimum manpower

* Circuit judge, sitting on the Court of Appeals by assignment.

requirements. A hearing on the charge was held before a hearing officer on February 1, 1983. Terrence Chasney, respondent's union president, testified that respondent was composed of thirty-three employees. The bargaining unit was divided into three subunits. Each subunit worked twenty-four hour shifts on alternating days at petitioner's two fire stations; however, not all eleven men worked each twenty-four hour shift because they were entitled to vacations, sick leave, and other types of leave. Therefore, in each twenty-four hour shift, there were three spots open for employees to schedule leave time on a first-come first-serve basis. The first two open spots were guaranteed; the third was not. If another employee was sick or otherwise unable to work, the third employee would have to be available to report to work so that the eight-man minimum manpower requirement was met. The goal of this system was to ensure that no more than three men would be off on any given day. Nonetheless, situations did arise where more than three men were off; for example, if more than one man called in sick, there would be only seven or less men available to work. This occurred thirteen times in 1981. Because it was department policy, at the chief's direction, to maintain eight men on a shift, members of other subunits would be called in on an overtime basis until there were eight men on a shift.

While there was no express policy directive requiring eight men to be on duty, the policy manual provided for procedures to be followed when the department was at its "minimum manpower (8 men)" and discussed the duties of each man when eight through eleven men were on duty.

At the time respondent filed the unfair labor practice charge, the parties were operating under

a collective bargaining agreement in effect from July 1, 1981, until June 30, 1983. During negotiations for that agreement, respondent proposed a clause which would have guaranteed the eight-man minimum manpower requirement. Petitioner rejected this proposal because there was a possibility that economic conditions or attrition could reduce the department's size. Eventually, the parties' dispute was arbitrated and, at that time, respondent dropped its demand for the minimum manpower clause.

Thereafter, Harry Miller, petitioner's fire chief, rewrote the policy manual, seeking to streamline it. In the new policy manual, the reference to an eight-man minimum was eliminated and the duty directives were rewritten to indicate duties for eight or less men.

On August 6, 1982, the chief met with captains, lieutenants, and sergeants, all of whom belonged to respondent, to discuss the changes. On August 31, 1982, the changes were posted and, on September 5, 1982, respondent wrote a letter to Miller, claiming that the change involved a mandatory subject of bargaining. On September 8, Miller met with respondent's representatives, but did not discuss changes which he believed were within his prerogative. Miller also met with Chasney on September 14, 16, and 17. On September 21, 1982, respondent's attorney wrote a letter to petitioner's city manager. Respondent never received a reply.

Respondent filed a grievance under the collective bargaining agreement. On February 3, 1983, the grievance was denied by arbitrator John B. Coyle. The issue before the arbitrator was "whether the contract does or does not require the City to maintain a minimum of eight men on duty on each shift at all times." Coyle found that the policy manual was not part of the contract. More-

over, he found that Article IV of the collective bargaining agreement reserved to petitioner the right to control "operations." We note that Article IV of the collective bargaining agreement required petitioner to "negotiate any changes in personnel policies related to hours, wages, or working conditions of any members of the Union."

On March 23, 1984, the hearing officer denied respondent's unfair labor practice charge. In doing so, the hearing officer relied on *Local 1277, Metropolitan Council No 23, AFSCME, AFL-CIO v City of Center Line,* 414 Mich 642; 327 NW2d 822 (1982), where our Supreme Court held that, while the initial decision to lay off an employee is within management's prerogative and, therefore, not a mandatory subject of bargaining, the impact of the decision is a mandatory subject of bargaining.

On April 16, 1984, respondent filed exceptions to the hearing officer's decision, noting that where an employee's workload and safety are affected, the employer must bargain because working conditions are a mandatory bargaining subject.

On April 25, 1985, the MERC issued its decision and order. The MERC held that this Court's decision in *Alpena v Alpena Fire Fighters Ass'n, AFL-CIO,* 56 Mich App 568; 224 NW2d 672 (1974), lv den 394 Mich 761 (1975), overruled in part on other grounds *Detroit v Detroit Police Officers Ass'n,* 408 Mich 410, 483, n 65; 294 NW2d 68 (1980), reh den 409 Mich 1101 (1980), app dis 450 US 903; 101 S Ct 1337; 67 L Ed 2d 326 (1981), was dispositive. In *Alpena, supra,* this Court held that manpower requirements which affected safety were subject to arbitration because safety practices were conditions of employment and, therefore, mandatory bargaining subjects. The MERC rejected petitioner's argument that *Local 1277, supra,* overruled *Alpena.* Instead, the MERC found that *Local*

*1277* was consistent with *Alpena* insofar as safety issues were involved. *Local 1277, supra,* pp 661-665. The MERC then found that Chasney's testimony outlined safety problems which would occur when less than four men were available at each station. As such, the MERC ruled that petitioner had violated its duty to negotiate with respondent to impasse over this mandatory bargaining subject.

The MERC then found that it was not bound by the arbitrator's decision in this case because the arbitrator's decision was based on the contract language, whereas the MERC's decision was based on statutory interpretation. Furthermore, the MERC decided that respondent did not waive its right to bargain over the minimum manpower issue by agreeing to the clause granting management the right to control operations in Article IV. Finally, the MERC found that respondent did not waive its right to bargain over the minimum manpower issue by dropping its demand that the issue be included in the 1981-to-1983 collective bargaining agreement. The MERC noted that petitioner did not want to be put in a position where it could not reduce the number of men in the department; petitioner did not indicate that it was thinking of altering the existing minimum manpower requirement. Consequently, the MERC decided that respondent had not waived its right to bargain concerning the minimum manpower issue. Because petitioner had not bargained to impasse, the MERC held that petitioner had committed an unfair labor practice. MCL 423.210(1)(e); MSA 17.455(10)(1)(e). The MERC then ordered petitioner to restore the old policy until it satisifed its obligation to bargain with respondent.

On May 1, 1985, respondent filed a motion for rehearing or for reconsideration with the MERC asking it to award back pay to individuals who

had been financially harmed by petitioner's action. On August 15, 1985, the MERC granted the affected employees back pay. MCL 423.216(b); MSA 17.455(16)(b).

As noted above, petitioner appeals as of right. The MERC's findings of fact, if supported by competent, material and substantial evidence on the record, viewed as a whole, shall be conclusive. Const 1963, art 6, § 28. MCL 423.216(e); MSA 17.455(16)(e). *Sault Ste Marie v Fraternal Order of Police Labor Council, State Lodge of Michigan,* 163 Mich App 350, 354; 414 NW2d 168 (1987). Substantial evidence is defined as more than a scintilla, but substantially less than a preponderance, of the evidence. *Id.* This Court may, of course, review the law applied by the MERC. *Id.*

In *Local 1277, supra,* the arbitration panel included a layoff clause in the parties' contract after the parties had reached an impasse. The layoff clause allowed layoffs in relation to layoffs in other city departments. The issue was whether the initial decision to lay off was a mandatory subject of bargaining. Our Supreme Court first noted that wages, hours, and other terms or conditions of employment are mandatory subjects of bargaining and, therefore, the public employer is required to bargain concerning those subjects. The Court then held that its analysis of the case law as applied to the layoff clause in issue led it to conclude that this particular clause was not a mandatory subject of bargaining. The Court noted that the city's decision to lay off police officers was like the decision to close down part of a business. The Court further noted that the distinction must be made between bargainable issues, those which affect conditions of employment, and policy issues, which are reserved to the government's discretion. Because the layoff clause in issue restricted the

government's ability to lay off employees in the police department (i.e., only in conjunction with layoffs in other departments), it was improper because it "unduly restrict[ed] the city in its ability to make decisions regarding the size and scope of municipal services." *Local 1277, supra,* p 660. The clause required the city to base its layoff decisions on the level of other services provided rather than upon need, revenues, or public interest.

The Court then noted that, while the initial decision to lay off is not a mandatory subject of bargaining, there is a duty to bargain over the impact of the decision to lay off. The Court discussed several cases in support of this rule, noting:

> The Michigan Court of Appeals was faced with the issue of whether a manpower clause was within the scope of the arbitration panel's authority in *Alpena v Alpena Fire Fighters Ass'n,* 56 Mich App 568; 224 NW2d 672 (1974). The Court concluded that the manpower award was within the subject matter and jurisdiction of the arbitration panel as it concerned safety, a "condition of employment". In a similar case, the Rhode Island Supreme Court found that the minimum manpower requirement affected both workload and safety of fire fighters and therefore was a mandatory subject of bargaining and arbitrable. *Narragansett v International Ass'n of Fire Fighters, AFL-CIO, Local 1589,* 119 RI 506; 380 A2d 521 (1977).
>
> The clause in this case, however, unlike the ones involved in the cases discussed above, does not involve safety. If the concern were truly over safety, then layoffs in other departments would have no bearing on the issue. The rationale for the wording of the clause was clearly to prevent retaliatory layoffs. Also, once the decision has been made by the city, the union can bargain about the

impact of that decision on workload and safety.
[*Local 1277, supra,* pp 663-664.]

Petitioner argues that, where safety and a city's
decision to provide a certain level of services are
intertwined, there are two schools of thought: (1)
one which suggests that the initial decision of
manpower supply is a governmental prerogative,
not subject to bargaining, but which nonetheless
states that the impact of that decision is subject to
bargaining as it affects the safety or workload of
the remaining employees; and (2) the other which
suggests that issues of safety and minimum man-
power are so intertwined that the decision to
reduce minimum manpower becomes a mandatory
subject of bargaining. The difference between these
two approaches becomes clearer when one realizes
that, under the former, the city may act and only
thereafter be required to bargain about the impact
of its decision upon the remaining employees'
workload or safety, while, under the latter, the
city must bargain with the union before manpower
reductions which affect the workers' safety are
implemented. Petitioner contends that in *Local
1277, supra,* our Supreme Court adopted the for-
mer approach. See *Sault Ste Marie, supra.* Peti-
tioner notes that it would be inconsistent to hold
that the city could lay off its fire fighters under
*Local 1277, supra,* but could not reduce the num-
ber of men per shift without negotiating with
respondent.

Respondent, on the other hand, argues that
*Local 1277, supra,* approvingly cited and discussed
cases which had held that, where safety is inter-
twined with the decision to reduce the work force,
the minimum manpower requirement becomes a
mandatory bargaining issue. Respondent further
notes that the Supreme Court distinguished the

layoff clause before it in *Local 1277* from the minimum manpower clause in *Alpena,* finding that safety was not in issue. We agree with respondent's reading of *Local 1277.* Hence, we hold that, where minimum manpower issues are inextricably intertwined with safety issues, they become mandatory bargaining subjects. MCL 423.215; MSA 17.455(15).

Petitioner next claims that its reduction in the minimum manpower requirement did not affect safety. The MERC's conclusion that the reduced minimum manpower requirement would affect safety is supported by competent, material, and substantial evidence and, therefore, is conclusive. MCL 423.216(e); MSA 17.455(16)(e). *Sault Ste Marie, supra,* p 354. The MERC's finding that petitioner had a long-standing policy regarding the eight-man minimum manpower requirement is affirmed for this same reason, as is the MERC's decision that respondent did not waive the right to bargain on this issue when it dropped its demand for arbitration on this issue. *Id.*

Petitioner next argues that the MERC improperly granted respondent's motion for rehearing on its request for back pay. Absent evidence of extenuating circumstances that the requesting party could not have, with reasonable diligence, discovered and produced all the evidence at the original hearing, its motion for rehearing should be denied. *Bd of Ed of the School Dist of the City of Detroit v Organization of School Administrators & Supervisors,* 1980 MERC Lab Op 581. Petitioner argues that respondent cannot meet this test.

While respondent apparently cannot meet this test, we note that MCL 423.216(c); MSA 17.455(16)(c) allows the MERC "upon reasonable notice and in such manner as it deems proper" to modify "in whole or in part, any finding or order

made or issued by it" before the record in the case has been filed in a court. Here, the MERC's decision was issued on August 15, 1985, and the record was filed with this Court on August 23, 1985. Therefore, the MERC properly exercised its discretion to modify its order to include back pay. See also 1979 AC, R 423.468(2).

Petitioner further contends that the back pay award was too speculative. The MERC's finding that the back pay award would not be speculative because petitioner maintained a list from which employees would be called in was based on material, competent and substantial evidence on the whole record and, therefore, is conclusive. *Sault Ste Marie, supra,* p 354.

Finally, petitioner claims the minimum manpower issue involved simple contract interpretation and, therefore, the decision of the arbitrator was binding absent repudiation. See, e.g., *Plymouth-Canton Community Schools Bd of Ed v Plymouth-Canton Ass'n of Educational Office Personnel,* 1984 MERC Lab Op 894, 897. We agree with respondent that this case also involved statutory interpretation and, therefore, the MERC properly reviewed the issue. See, e.g., *Bay City School Dist v Bay City Education Ass'n, Inc,* 425 Mich 426; 390 NW2d 159 (1986); *Detroit Fire Fighters Ass'n v Detroit,* 408 Mich 663; 293 NW2d 278 (1980); *Kent Co Education Ass'n/Cedar Springs Education Ass'n v Cedar Springs Public Schools,* 157 Mich App 59, 63-64; 403 NW2d 494 (1987).

Affirmed.