OAK PARK PUBLIC SAFETY OFFICERS ASSOCIATION
v CITY OF OAK PARK

Docket No. 271767. Submitted October 9, 2007, at Detroit. Decided
October 18, 2007. Approved for publication December 11, 2007, at
9:00 a.m. Leave to appeal sought.

The city of Oak Park filed an unfair labor practice charge in the
Michigan Employment Relations Commission (MERC) against the
Oak Park Public Safety Officers Association (the union). The city
alleged that the union's demand to bargain, during compulsory
arbitration proceedings pursuant to 1969 PA 312, over provisions
relating to issues of minimum staffing, layoffs, and recalls violated
the public employment relations act (PERA), MCL 423.201 *et seq.*
A hearing officer issued a recommended order stating that, be-
cause the minimum staffing proposal was not inextricably inter-
twined with the safety of the union's members, it was a permis-
sive, not mandatory, subject of bargaining. The recommended
order further stated that the union could not demand to bargain
over a proposal conditioning the layoff of its members on the layoff
of employees who were not members. MERC adopted the recom-
mended order over the union's exceptions. The union appealed.

The Court of Appeals *held*:

1. MERC implemented the proper legal standard in determin-
ing that the staffing level provision at issue was a permissive
subject of bargaining. Only those matters that have a significant
impact on conditions of employment are subject to mandatory
bargaining; therefore, the impact of a staffing decision on working
conditions must be proven to be significant for the staffing
decision to be considered a mandatory subject of bargaining.

2. MERC properly ruled that the sections of the collective
bargaining agreement providing that no public safety officers
would be laid off until all civilians performing police and fire duties
were laid off, and that public safety officers would be rehired
before such civilians, were not mandatory subjects of collective
bargaining because these provisions would adversely affect mem-
bers of other bargaining units.

Affirmed.

LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT — ARBITRATION —
MANDATORY SUBJECTS OF BARGAINING — STAFFING LEVELS.

The effect of a public employer's decision regarding staffing levels on
the working conditions of public safety employees must be proven
to be significant for that decision to be considered a mandatory
subject of bargaining (MCL 423.215[1]).

*Frank A. Guido* and *George J. Mertz* for the Oak Park
Public Safety Officers Association.

*Keller, Thoma, A Professional Corporation* (by *Dennis B. DuBay* and *Richard W. Fanning, Jr.*), for the city
of Oak Park.

Before: CAVANAGH, P.J., and DONOFRIO and SERVITTO,
JJ.

PER CURIAM. Respondent Oak Park Public Safety
Officers Association (the union) appeals as of right a
decision of the Michigan Employment Relations Commission (MERC) holding that issues of minimum staffing, layoff, and recall were not mandatory subjects of
collective bargaining under the public employment relations act (PERA), MCL 423.201 *et seq.* We affirm.

The union is the certified bargaining representative
for nonsupervisory public safety officers (PSOs) employed by the city of Oak Park. The collective bargaining agreement effective from July 1, 1997, through
June 30, 2001, contained minimum staffing provisions,
including (1) a minimum number of PSOs per platoon
(§ 8.1 C), (2) a minimum number of PSOs per shift (§
8.1 D), (3) a minimum number of PSOs in a patrol car
during the night shift (§ 30.1), and (4) a minimum
number of PSOs in the operations division (§ 37.1). The
agreement also contained provisions relating to layoffs
and recalls; §§ 33.4 and 33.5 provided that once the

employer has made the decision to lay workers off, non-PSOs who are performing PSO work would be laid off first and recalled last.

Before and during the negotiation for a new collective bargaining agreement, the city indicated that it would not negotiate the minimum staffing provisions because they were only permissive subjects of bargaining, not mandatory subjects of bargaining. The union sought to preserve the status quo with regard to the above staffing and layoff provisions. After an impasse developed, the union filed a petition for compulsory arbitration pursuant to 1969 PA 312 (Act 312), MCL 423.231 *et seq.* Following the appointment of an Act 312 panel chairperson, the city filed with MERC an unfair labor practice (ULP) charge against the union for unlawfully demanding bargaining on the minimum staffing provisions, which the city maintained were permissive subjects of bargaining.[1] Thereafter, the Act 312 chairperson held the matter in abeyance pending the outcome of the ULP charge. Later, the city amended its ULP charge to include an allegation that the union unlawfully demanded bargaining on the layoff and recall provisions, §§ 33.4 and 33.5, which it contended were also permissive subjects of bargaining.

Subsequently, the union amended its Act 312 arbitration petition and agreed to omit from the new collective bargaining agreement §§ 8.1(C), 8.1(D), 30.1, and 37.1. But the union sought to add a provision titled "safety/staffing," which provided:

> To the extent the City of Oak Park continues to operate a public safety department, providing joint fire and police protection, the City shall maintain on duty, at all times, assigned to the operations division (excluding non-

---

[1] The contract provisions challenged as permissive subjects of bargaining were §§ 8.1(C), 8.1(D), 30.1, and 37.1.

operations personnel which includes, the detective bureau, administrative officer, fire inspector, community relations/civil defense coordinator and training officer) a safety/staffing level of seven (7) public safety officers, of which a minimum of five (5) public safety officers shall be fire certified, in addition to possessing law enforcement certification. A minimum of five (5) fire certified public safety officers shall be deployed for a structural fire, including one (1) fire certified public safety officer to operate fire apparatus including pumping equipment, and no less than four (4) fire certified public safety officers to suppress the structural fire, of which no less than two (2) fire certified public safety officers shall be required to physically enter the hazardous area of a structural fire, with two (2) fire certified safety officers outside the hazardous area available for assistance, rescue and operation of additional fire equipment and apparatus. When a fire incident arises, a minimum of two (2) public safety officers shall be deployed as primary and back-up to perform law enforcement responsibilities.

The Employer shall maintain the safety/staffing level of seven (7) public safety officers on duty in operations at all times by hold-over or call-in of necessary personnel. In the event of such hold-over or call-in, the affected employees shall be paid at the overtime rate. The procedure for hold-over or call-in, as well as payment of overtime, shall be in accordance with provisions of the collective bargaining agreement.

The city then filed a second amended ULP charge alleging that the union persisted in unlawfully demanding that it bargain over, and allow an Act 312 arbitrator to award, contract provisions dealing with permissive bargaining subjects.

Thereafter, MERC held a five-day ULP hearing before a hearing referee. Generally, the issues before MERC were whether the union's proposals establishing staffing levels for PSOs performing both firefighting and law enforcement work and particular layoff and

recall provisions constituted mandatory subjects of collective bargaining that could be pursued in an Act 312 arbitration. Substantial testimony and other evidence were submitted at the hearing that established relevant facts, including (1) the background of the city of Oak Park and its public safety department, (2) how the public safety department functions and is organized, (3) the duties and training required of personnel, (4) emergency procedures in place such as using non-operational on-duty, fully trained personnel and call-back off-duty personnel, as well as relying on mutual aid agreements with about 25 communities in the county, (5) fire response practices, (6) law enforcement response practices, and (7) fire statistics and injuries.

Following the proceedings, the hearing referee issued his written decision and recommended order. After extensive recitation of the relevant facts, the positions of the parties, and applicable law, the hearing referee's findings and conclusions of law included: (1) "to establish that the minimum staffing proposal constitutes a mandatory subject of bargaining, the evidence must demonstrate that the proposal is inextricably intertwined with the safety of its members; i.e. that the staffing proposal has a genuine or significant impact on safety;" (2) "[r]egardless of whether the Union's proposal is framed in terms of officers per shift or per task . . . the record in this case fails to establish that the Union's minimum staffing proposal has a significant impact on the safety of its members;" and, thus, (3) "the minimum staffing clause [is] a permissive subject of bargaining" and the ULP charge against the union was proved.

With regard to the layoff and recall issue, the hearing referee concluded that, although the union had the

right to demand bargaining over the impact of a decision to [lay off] bargaining unit members, including the safety and

workload of the remaining PSO's, seniority, and 'bumping' rights, the Union may not demand to bargain over and take to impasse a proposal conditioning the layoff of its members on the layoff of non-unit employees.

The hearing referee concluded that "[t]he contract provisions pertaining to minimum staffing and layoffs must be withdrawn from presentation to the Act 312 arbitration panel, and [the city] must be permitted to eliminate the layoff and recall provision from the collective bargaining agreement."

Thereafter, the union filed exceptions to the decision and recommended order, which included that the hearing referee applied an incorrect legal standard in ruling that issues of staffing must be "inextricably intertwined with safety" to constitute mandatory subjects of bargaining. Relying on *Jackson Fire Fighters Ass'n, Local 1306, IAFF, AFL-CIO v City of Jackson (On Remand)*, 227 Mich App 520, 526-527; 575 NW2d 823 (1998), MERC concluded that the hearing referee applied the correct standard—"inextricably intertwined with safety" is equivalent to requiring that there be a significant impact on firefighter safety. The standard was further explained as follows:

> While we agree that the previous case law, reviewed at length by the [hearing referee], is not totally consistent, what can be gleaned from prior decisions is that a manning proposal is a mandatory subject of bargaining when there is competent evidence of the proposal's demonstrable and significant relationship to the safety of employees. That is, there must be competent evidence that a manning proposal has an impact upon the risk of injury or harm to a member or members of the bargaining unit.

MERC then considered the union's proposals that a minimum of seven PSOs be on duty each shift and that a minimum number of PSOs be deployed to a fire and perform certain functions. MERC rejected the mini-

mum staffing proposal, holding that "[t]o mandate bargaining as to the number of officers per shift would be to mandate bargaining as to the total size of the work force, a determination clearly reserved to management." MERC noted that the union proposed that the current practice of sending five firefighters to a fire be preserved, but MERC rejected the union's position that those firefighters had to be PSOs.

MERC next considered the union's proposal that a minimum of two PSOs be deployed for law enforcement duties when a fire incident arises. MERC rejected this proposal on the ground that it would mandate the level of service that the city provides, explaining that "[w]hether to provide manpower to perform law enforcement responsibilities when a fire incident arises is a permissive subject of bargaining." MERC also rejected the union's position regarding layoffs and recalls because the proposal directly affected employees in other bargaining units, including command officers and civilian dispatchers, and, thus, was a permissive subject of bargaining. MERC concluded by adopting the hearing referee's decision and recommended order. This appeal followed.

First, the union argues that MERC has adopted an incorrect standard—the "inextricably intertwined with safety" standard—that is merely descriptive, not prescriptive, and is not the only test that may be applied in determining whether a proposal is a mandatory or permissive subject of bargaining. We disagree.

MERC's decisions are reviewed on appeal pursuant to Const 1963, art 6, § 28 and MCL 423.216(e). *Grandville Muni Executive Ass'n v Grandville*, 453 Mich 428, 436; 553 NW2d 917 (1996). Accordingly, MERC's findings of fact are conclusive if supported by competent, material, and substantial evidence on the whole record.

*Id.*; *Detroit v Detroit Fire Fighters Ass'n, Local 344, IAFF*, 204 Mich App 541, 552; 517 NW2d 240 (1994). MERC's legal determinations may not be disturbed unless they violate a constitutional or statutory provision or they are based on a substantial and material error of law. *Grandville Muni Executive Ass'n, supra* at 436.

The union is not disputing the factual findings of MERC; rather, it is disputing the legal standard that MERC applied when determining whether the union's minimum staffing proposal was a mandatory subject of collective bargaining. Specifically, the union is arguing that "[t]he proper test to determine if a minimum staffing issue is a mandatory subject of bargaining is whether there is a significant impact on safety to the extent that safety concerns are arguably intertwined with and inseparable from the minimum staffing issue." The union claims that the tests used in this case were too strict. The hearing referee stated the standard as whether "the proposal is inextricably intertwined with the safety of its members; i.e. that the staffing proposal has a genuine or significant impact on safety." And MERC held that there must be "competent evidence of the proposal's demonstrable and significant relationship to the safety of employees. That is, there must be competent evidence that a manning proposal has an impact upon the risk of injury or harm to a member or members of the bargaining unit."

It appears that the union primarily challenges the extent to which the minimum staffing proposal must affect the safety of employees. The union contends that the relationship between minimum staffing and safety must only *arguably* be intertwined, not proved with evidence to "be genuine or significant" or "demonstrable and significant." In support of its position, the

union claims that some previous caselaw has implied that minimum staffing proposals must only "concern safety"[2] or "affect safety."[3] The union argues that this Court first used the standard "inextricably intertwined with safety" in *Trenton v Trenton Fire Fighters Union, Local 2701, IAFF*, 166 Mich App 285, 295; 420 NW2d 188 (1988), without supporting analysis or precedent and, thus, its use was not intended to be any different than the "affected safety" standard. Accordingly, the union ultimately claims, the "inextricably intertwined with safety" test is "unduly narrow and restrictive" and should be considered "a distinction without significance from the tests using language of 'affecting safety' or 'concerned with safety' or 'relating to safety' or any other descriptive and not prescriptive term." We disagree with the union's position.

Mandatory subjects of bargaining under PERA include "wages, hours, and other terms and conditions of employment." MCL 423.215(1). "Mandatory subjects" are determined on a case-by-case basis. *Detroit Fire Fighters Ass'n, supra* at 553; *Manistee v Manistee Fire Fighters Ass'n, Local 645, IAFF*, 174 Mich App 118, 121; 435 NW2d 778 (1989). It has long been established that any matter that has a *significant* impact on wages, hours, or other terms and conditions of employment is subject to mandatory bargaining. See *Detroit Fire Fighters Ass'n, supra* at 553; *Manistee Fire Fighters Ass'n, supra* at 121-122, quoting *Detroit v Michigan Council 25, AFSCME*, 118 Mich App 211, 215; 324 NW2d 578 (1982).

---

[2] See *Local 1277, Metro Council No 23, AFSCME, AFL-CIO v Center Line*, 414 Mich 642, 663; 327 NW2d 822 (1982).

[3] *Alpena v Alpena Fire Fighters Ass'n, AFL-CIO*, 56 Mich App 568, 575; 224 NW2d 672 (1974), overruled in part on other grounds *Detroit v Detroit Police Officers Ass'n*, 408 Mich 410, 483 n 65 (1980).

A condition of employment is subject to bargaining, but issues of policy are exclusively reserved to government discretion or management prerogative and cannot be made mandatory subjects of bargaining. See *Local 1277, Metro Council No 23, AFSCME, AFL-CIO v Center Line*, 414 Mich 642, 660; 327 NW2d 822 (1982). Accordingly, issues of manpower or staffing levels generally have been determined to be managerial decisions that are not subject to mandatory bargaining. *Sault Ste Marie v Fraternal Order of Police Labor Council, State Lodge of Michigan*, 163 Mich App 350, 355; 414 NW2d 168 (1987). However, the impact of such managerial decisions—on, for example, employee workload or safety—may result in conditions that come within the ambit of the phrase "other terms and conditions of employment" that is subject to mandatory bargaining. See *Local 1277, Metro Council No 23, supra* at 661-665; *Fraternal Order of Police Labor Council, supra* at 356.

Here, the union's position is that the managerial decision to reduce the number of PSOs who perform the dual functions of law enforcement and firefighting arguably affects the safety of the employed PSOs. The union contends that as long as a staffing decision *arguably* affects, concerns, or relates to safety—whether the effect be minimal, insignificant, or unjustifiable—the issue of staffing is a condition of employment that is subject to mandatory arbitration. This position is untenable. As discussed earlier, only those matters that have been proven to have a *significant* impact on conditions of employment are subject to mandatory bargaining. See *Detroit Fire Fighters Ass'n, supra* at 553; *Manistee Fire Fighters Ass'n, supra* at 121-122; *Fraternal Order of Police Labor Council, supra* (holding that "the position that manpower affects safety must be supported by some evidence"). Although in its proposed test the union acknowledges that a

minimum staffing proposal must present a "significant impact on safety," the union emasculates the "significant" requirement with the caveat that those safety concerns need only *arguably* be intertwined with the staffing issue. This is not a standard that comports with the law.

The union's argument that *Local 1277, Metro Council No 23, supra* at 663, and *Alpena v Alpena Fire Fighters Ass'n, AFL-CIO,* 56 Mich App 568, 575; 224 NW2d 672 (1974), overruled in part on other grounds *Detroit v Detroit Police Officers Ass'n,* 408 Mich 410, 483 n 65 (1980), set forth the legal standard that a minimum staffing proposal must only "concern" or "affect" safety to be subject to mandatory bargaining is misguided. In *Local 1277, Metro Council No 23, supra* at 663-665, the Court clearly concluded that the layoff proposal at issue in that case did not involve safety, it merely involved the initial layoff decision—a matter within the management prerogative and a policy decision. The Court further held that the impact of the decision may be subject to mandatory bargaining, but did not specifically set forth the standard for determining when the purported impact of the layoff decision becomes a subject of mandatory bargaining because that issue was not before the Court. *Id.* at 662-664.

Similarly, in *Alpena Fire Fighters Ass'n, supra,* the issue before the Court was not the standard to be applied in determining when a minimum staffing proposal is subject to mandatory bargaining, it was whether the Act 312 arbitration panel had jurisdiction to issue a "manpower award" to maintain the status quo. *Id.* at 574-575. This Court concluded that under MCL 423.215, the arbitration panel did have jurisdiction over disputes concerning conditions of employment. *Id.* at 575. Then the Court noted the following:

> The union representative testified that the number of firemen on duty affected not only the public safety, but also the firemen's safety. This position was supported by extensive testimony concerning fire fighting practices and procedures. A safety practice is a condition of employment. We hold, therefore, that the manpower award was within the subject matter and jurisdiction of the arbitration panel. [*Id.* (citations omitted).]

This holding, however, must be placed in context. As the Court had previously noted in its opinion, the only testimony with regard to the manpower issue was given by a union representative, one of the firefighters, and the testimony was not rebutted by the city. *Id.* at 574. In other words, the city did not present any evidence that was contrary to the union's position with regard to the manpower issue in that case. Thus, because the union presented evidence that raised an issue of fact with regard to the manpower issue and supported its position with "extensive testimony" that the city did not rebut, this Court concluded that the arbitration panel properly ruled on the issue. *Id.* at 574-575.

Here, the issue was not whether the minimum staffing proposal could be subject to mandatory arbitration. It clearly could be an issue for mandatory arbitration if the proposal was proven to significantly affect the safety of the PSOs who remained employed. And, unlike in *Alpena Fire Fighters Ass'n,* here, both the union and the city presented evidence regarding whether the minimum staffing proposal would indeed significantly affect the PSOs' safety. In *Alpena Fire Fighters Ass'n, supra* at 574, the only evidence on the issue was presented by the union. Therefore, because only one side presented evidence, the Court was not presented with the issue of the proper standard to be applied in weighing the evidence on both sides of the issue. Nevertheless, the Court noted that the union's position was

supported by "extensive testimony," *id.* at 575, which cannot be reasonably interpreted as implying that merely any arguable impact on safety would be sufficient to cause the minimum staffing proposal to be subject to mandatory arbitration.

And, contrary to the union's claim, this Court in *Trenton Fire Fighters Union, supra,* did not use the "inextricably intertwined with safety" standard without analysis. Rather, the *Trenton* Court considered the discussion set forth by our Supreme Court in *Local 1277, Metro Council No 23, supra* at 655-661, which noted difficulty with the concepts of permissive and mandatory subjects of bargaining. The *Local 1277* Court looked to how other jurisdictions distinguished between permissive and mandatory subjects and noted, for example, that the test used in Wisconsin was whether the subject "primarily" or "fundamentally" related to wages, hours, or conditions of employment. *Id.* at 662. Although the standard "inextricably intertwined with safety" was not specifically set forth by our Supreme Court, we agree with the *Trenton* Court that such a standard conveys that a significant relationship must be proven to exist between the minimum staffing proposal and, for example, safety, before the issue is subject to mandatory arbitration. This standard properly balances the rights of the parties; that is, the city's right to manage its business and determine the level of services it will provide and the employee's right not to be subjected to unsafe working conditions.

The standards implemented by the hearing referee and MERC in this case are consistent with the requirement that only those matters that have a significant impact on conditions of employment are subject to mandatory bargaining. The impact of a staffing decision on working conditions, including safety, must be proven

to be significant, not merely to *arguably* exist. The hearing referee recognized that requirement when he articulated the standard as whether "the proposal is inextricably intertwined with the safety of its members; i.e. that the staffing proposal has a genuine or significant impact on safety." MERC also recognized that standard when it held that there must be "competent evidence of the proposal's demonstrable and significant relationship to the safety of employees." To adopt the union's position would be tantamount to requiring that most, if not all, minimum staffing proposals—particularly with regard to PSOs, police officers, firefighters, and others engaged in high-risk professions—be subject to mandatory bargaining, given that a reduction in the number of these employees will arguably have some—albeit minimal—impact on safety. Such a conclusion would have the effect of invading the city's prerogative to determine the size and scope of its business, including the services it will provide. See *Metro Council No 23 & Local 1277, AFSCME, AFL-CIO, supra* at 660. We decline to reach such a conclusion.

In summary, we conclude that the legal standard that MERC applied in determining whether the union's minimum staffing proposal was a mandatory subject of bargaining did not violate a constitutional or statutory provision and was not based on a substantial and material error of law. See *Grandville Muni Executive Ass'n, supra* at 436. To the extent that the union argued that even under the "inextricably intertwined with safety" standard its minimum staffing proposal was subject to mandatory bargaining, we disagree. We have reviewed at length the record evidence, the decision and recommended order of the hearing referee, and the decision and order of MERC, which adopted the recommended order of the hearing referee. It is clear that the

factual findings and final decision of MERC were supported by competent, material, and substantial evidence on the whole record. See Const 1963, art 6, § 28; MCL 423.216(e); *Grandville Muni Executive Ass'n, supra* at 436. Therefore, we affirm the MERC decision that the union's minimum staffing proposal is not a mandatory subject of bargaining within the meaning of PERA.

Next, the union argues that MERC erred when it concluded that the layoff and recall provisions, §§ 33.4 and 33.5, were not mandatory subjects of collective bargaining. We disagree. The sections of the collective bargaining agreement at issue are:

> 33.4: No layoffs of Public Safety Officers shall occur until all non-Public Safety Officers or civilians who perform police and fire duties are laid off first. Said duties are to be defined as work presently or previously performed by Public Safety Officers.
>
> 33.5: Public Safety Officers who have been laid off shall be rehired before non-Public Safety Officers or civilians who perform police and fire duties.

As MERC concluded, the record evidence established that members of other bargaining units, including civilian dispatchers and command officers, perform work that PSOs "presently or previously performed." Accordingly, the members of those other bargaining units would be adversely affected by §§ 33.4 and 33.5, which is impermissible. See *Metro Council No 23 & Local 1277, AFSCME, AFL-CIO, supra* at 660-661. The union's argument that these provisions do not prohibit the city's initial decision to lay workers off, but merely deal with the effect of such a decision on the workload and safety of the PSOs, is contradicted by the plain language of the provisions. Therefore, we affirm the

MERC decision; the layoff and recall provisions are not mandatory subjects of bargaining within the meaning of PERA.

Affirmed.