**[J-86-2016][M.O. – Todd, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| CITY OF ALLENTOWN | : | No. 24 MAP 2016 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 1802 CD |
| v. | : | 2014 dated 8/7/15 affirming in part and |
| | : | reversing in part the order of the Lehigh |
| | : | County Court of Common Pleas, Civil |
| INTERNATIONAL ASSOCIATION OF | : | Division, dated 9/8/14 at Nos. 2013-C- |
| FIRE FIGHTERS LOCAL 302 | : | 4397 and 2013-C-4438 |
| | : | |
| | : | |
| INTERNATIONAL ASSOCIATION OF | : | ARGUED: September 13, 2016 |
| FIRE FIGHTERS LOCAL 302 | : | |
| | : | |
| V. | : | |
| | : | |
| CITY OF ALLENTOWN | : | |
| | : | |
| APPEAL OF: INTERNATIONAL | : | |
| ASSOCIATION OF FIRE FIGHTERS | : | |
| LOCAL 302 | : | |

**CONCURRING OPINION**

**CHIEF JUSTICE SAYLOR**                    **DECIDED: March 28, 2017**

I agree with the majority that the City of Allentown is not entitled to relief from the award provision requiring 25 firefighters per shift, although I would reach this conclusion based on the Act 111 arbitration panel's reaffirmation of its original award – which I interpret to subsume an implicit record-based determination that the accommodations provided in such award were sufficient to assist the City in resolving its pension-fund difficulties.

Initially, it should go without saying that resolving an unfunded pension liability of substantial magnitude is a managerial responsibility. Furthermore, the majority's view of the City's evidence as "tangential," Majority Opinion, *slip op.* at 21, is not completely aligned with that of the panel, which considered it central and weighty – and ultimately concluded that such proofs "corroborate[d] the City's claim that current financial circumstances mandate recognition by the Panel of the City's need for relief." *In re Interest Arbitration Involving City of Allentown & IAFF, Local 302*, AAA Case No. 14 360 L 00947 11 (July 11, 2012), *slip. op.* at 3, *reprinted in* RR. 29a. As a result, the panel reduced the per-shift complement from 28 (in the prior collective bargaining agreement) to 25 under the present framework. It additionally changed the method by which employees' salary is calculated for pension purposes so as to exclude overtime pay. *See id.* at 6, *reprinted in* RR. 32a. On reissuing the award after the second hearing, moreover, the panel elaborated that the City's "claims of financial extremis were not substantially challenged" and that the hearing evidence supported the original award's conclusion that "funding of the pension plan had become 'critically onerous' for the City." *In re Interest Arbitration Involving City of Allentown & IAFF, Local 302*, AAA Case No. 14 360 L 00947 11 (Sept. 23, 2013), *slip. op.* at 7, *reprinted in* RR. 214a.

I would note, as well, that whether a minimum per-shift complement of firefighters affects the overall size of the firefighting force is highly fact-sensitive. The majority indicates that, in the present matter, the 25-employee minimum will have no effect on the total size of the City's force. *See* Majority Opinion, *slip op.* at 22-23.[1] Even if that is accurate here, it will not be true in all situations. In a smaller city, for example, a similar

---

[1] The majority states that the City "may meet minimum mandates through overtime and fire company closures." Majority Opinion, *slip op.* at 22. It is unclear, however, how fire company closures can aid the City in complying with this requirement since, regardless of any closures, it still must maintain 25 firefighters per shift citywide.

per-shift minimum could have a significant effect on the total size of the municipality's firefighting force. The present controversy therefore highlights that, in some instances, the determination of whether a certain staffing requirement constitutes a managerial prerogative is fact-dependent. This, in turn, raises the question of whether and when it is appropriate for appellate courts to engage in record-based fact-finding on disputed questions of fact within the framework of narrow *certiorari* review.

For my part, I believe that courts should minimize such fact-finding and defer, where possible, to any express or implied findings reached by the arbitration panel.[2] In this regard, I note that, in some controversies where disputed items have been deemed bargainable, this Court has addressed the nature of the item as such without delving into the record evidence, *see, e.g.*, *Borough of Ellwood City v. PLRB*, 606 Pa. 356, 373, 998 A.2d 589, 599 (2010) (acknowledging that rules on tobacco use in the workplace constitute working conditions), or has relied on the circumstance that record-based descriptions made by one party were not opposed by the other party, *see, e.g.*, *Dep't of Corr. v. Pa. State Corr. Officers Assoc.*, 608 Pa. 521, 540-41, 12 A.3d 346, 358 (2011) (concluding that litigation protection was a condition of employment where the Commonwealth did not dispute the union's record-based assertion that such protection was especially important for certain classes of public-safety employees).

Presently, to the extent the majority's analysis can be read to rest upon appellate fact-finding, such an approach appears unnecessary, to me at least, and my agreement

---

[2] Such deference stems from the fact that the panel hears the evidence first hand and, apart from narrow *certiorari*, its decisions are non-reviewable. *See* 43 P.S. §217.7; *see also City of Erie v. IAFF, Local 293*, 74 Pa. Cmwlth. 245, 247-48, 459 A.2d 1320, 1321 (1983)(deferring to the arbitration board's fact findings regarding the safety implications of the number of firefighters per rig). *See generally Town of Narragansett v. IAFF, AFL-CIO, Local 1589*, 380 A.2d 521, 522 (R.I. 1977) (expounding upon the deferential standard of judicial review in matters involving labor arbitration).

with its holding is ultimately grounded on deference to the arbitration panel. Here, as noted, the panel acknowledged the untenable state of the City's pension fund and made adjustments to the minimum shift size and method for pension calculations accordingly. In light of such acknowledgement, it can reasonably be inferred that, in issuing its first award, the panel concluded that the above-mentioned adjustments would adequately ameliorate those difficulties. Any evidence offered by the City during the second hearing was insufficient to alter the panel's determination in this regard. *See generally In re Interest Arbitration Involving City of Allentown & IAFF, Local 302*, AAA Case No. 14 360 L 00947 11 (Sept. 23, 2013), *slip. op.* at 7, *reprinted in* RR. 214a ("The evidence presented at the reconvened hearing does not persuade the Chairman that there are any compelling reasons to change or modify the July 11, 2012 Award."). In resolving the present appeal I would simply defer to the panel's judgment and, on that basis, conclude that the per-shift minimum of 25 firefighters does not unduly infringe upon the City's managerial prerogatives, including its responsibility to address its pension-fund shortfall.

In response to the above remarks, the majority admonishes that "a determination of whether a topic is negotiable is typically a broadly applicable legal conclusion." Majority Opinion, *slip op.* at 23-24. Certainly, however, this assessment is not a mainstream view. For example, in expressing circumspection about the potential for summary resolution of scope-of-bargaining questions, the Washington Supreme Court explained:

> Every case presents unique circumstances, in which the relative strength of the public employer's need for managerial control on the one hand, and the employees' concern with working conditions on the other, will vary. General understandings – such as an understanding that staffing levels typically weigh on the managerial prerogative side of the balance of employer and union interests – may,

of course, inform [the] analysis. But care must be taken to recognize meaningful distinctions in the circumstances of different cases.

*IAFF, Local Union 1052 v. Pub. Emp't Relations Comm'n*, 778 P.2d 32, 37 (Wash. 1989).[3]

Indeed, as I read both *Borough of Ellwood City* and *City of Philadelphia v. IAFF, Local 22*, 606 Pa. 447, 999 A.2d 555 (2010), this Court's own decisions implement such a case-by-case approach. *See Borough of Ellwood City*, 606 Pa. at 378, 998 A.2d at 602 (stressing the "case-specific inquiry" necessary to determine whether an ordinance impacting on working conditions unduly interfered with employee collective bargaining rights); *City of Phila.*, 606 Pa. at 476-77, 999 A.2d at 572-73 (finding that a provision of an arbitration award unduly infringed on managerial responsibilities, not on account of

---

[3] *See also Oak Park Pub. Safety Officers Ass'n v. City of Oak Park*, 745 N.W.2d 527, 533-35 (Mich. Ct. App. 2007) (indicating that "issues of manpower or staffing levels generally have been determined to be managerial decisions that are not subject to mandatory bargaining[;] [h]owever, the impact of such managerial decisions – on, for example, employee workload or safety – may result in conditions that come within the ambit of the phrase 'other terms and conditions of employment,' that is subject to mandatory bargaining," and highlighting the circumstance-dependent nature of this assessment); *City of Worcester v. Labor Relations Comm'n*, 779 N.E.2d 630, 634-35 (Mass. 2002) ("[T]he inquiry as to whether a particular decision falls within the sphere of core managerial prerogatives must . . . be made on a case-by-case basis."); *City of Jersey City v. Jersey City Police Officers Benevolent Ass'n*, 713 A.2d 472, 482 (N.J. 1998) (collecting cases focusing on the nebulous line between negotiable and non-negotiable items and emphasizing the necessity for a case-by-case determination); *Denver Firefighters Local No. 858, IAFF, AFL-CIO v. City & Cnty. of Denver*, 292 P.3d 1101, 1108 (Colo. Ct. App. 2012) (recognizing "the fact-specific nature of [the] analysis [distinguishing between mandatory and permissive subjects of negotiation]," and "that the factors relevant to a court's balancing will vary depending on the circumstances of the case before it"), *rev'd on other grounds*, 320 P.3d 354 (Colo. 2014); *cf. Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 209, 214-15, 85 S. Ct. 398, 402, 405 (1964) (holding that a company's decision to contract out maintenance work was bargainable under the National Labor Relations Act "on the facts of this case," but cautioning that the decision should not be viewed as holding that all contracting out is bargainable).

the substantive nature of the provision, but based upon specific procedures for implementation prescribed by the award); *see also* Majority Opinion, *slip op.* at 20-21 (addressing whether the evidence adduced by the parties *in this case* demonstrates that the mandatory minimum staffing provision in issue unduly infringes managerial responsibilities, and ultimately concluding that the union's evidence of an impact on firefighter safety was persuasive, while the City's evidence of an impact on unfunded pension liability was weak).[4]

All of the above also is reflected in the pivotal prong of the relevant test for arbitrability, as stated in *City of Philadelphia*, which ultimately requires an assessment of whether the discrete "*award* unduly infringes upon the exercise" of managerial responsibilities. *City of Phila.*, 606 Pa. at 473, 999 A.2d at 571 (emphasis added); *accord* Brief for Appellant at 19 (framing the issue under review in precisely such terms); Brief for Appellee at 15 (same). While the explication of the same prong in *Borough of Ellwood City* focused upon the appropriateness of collective bargaining over the "topic," *Borough of Ellwood City*, 606 Pa. at 375, 998 A.2d at 600 – as opposed to the impact of an award – this difference appears to relate to that opinion's derivation from an unfair-labor-practice dispute (rather than an interest arbitration proceeding). In

---

[4] Insofar as the majority adopts the position that its merits evaluation of the parties' evidence is only necessary to attain factual support for a broad legal determination, *see id.* at 23-24, such an approach suggests that a topic's bargainability as a categorical matter depends on the fortuity of how severely managerial responsibilities and firefighter safety are affected in the first controversy to reach this Court. In response, the majority indicates that most other legal issues are similarly resolved based on the first dispute to reach us. *See id.* at 26 n.12. Ordinarily, however, the precedential scope of such decisions is limited by our restrained jurisprudential methodology whereby the holding of each case is to be read against its underlying facts. *See, e.g.*, *Maloney v. Valley Med. Facilities, Inc.*, 603 Pa. 399, 415, 984 A.2d 478, 488 (2009). The majority's categorical approach here displaces that principle.

any event, the Court in *City of Philadelphia* confirmed that the tests were intended as essential equivalents. *See City of Phila.*, 606 Pa. at 473 n.21, 999 A.2d at 571 n.21.[5]

The majority also suggests that my position undermines the essential close constraints upon narrow-certiorari review. *See* Majority Opinion, *slip op.* at 29-30. To the contrary, however, I share the majority's concern for confining such review as closely as possible. *Accord City of Phila.*, 606 Pa. at 488, 999 A.2d at 580 (Saylor, J., concurring and dissenting) (expressing concern that the judiciary should not "overstep our own limited role under the narrow certiorari doctrine"). Nevertheless, the fact of the matter is, rightly or wrongly, since the 1980s this Court has blended a limited strain of

---

[5] Although, again, the *Borough of Ellwood City* Court referred to the "topic" in its statement of the pivotal prong of the governing test, in the dispositive review the Court ultimately did specifically review the validity of the discrete vehicle through which employee working conditions had been altered, *i.e.*, a municipal ordinance. *See Borough of Ellwood City*, 606 Pa. at 378-79, 998 A.2d at 602. In this regard, in terms of the scope-of-bargaining analysis, the ordinance in *Borough of Ellwood City* can be viewed as an analogue to the arbitration award in *City of Philadelphia*.

The analysis of the "*topic*" of a unilateral imposition by an employer or an interest arbitration award, is, of course, relevant both to the validity of both of these instrumentalities, as well to as to whether or not interest arbitrators may have exceeded their powers under the narrow certiorari regime prescribed by prevailing precedent. Review of the "*award*," as required in *City of Philadelphia*, has equal relevance, however, in terms of its broader connotation of also implicating a weighing of conflicting interests in the context of a *single topic*.

In this regard, plainly, the pivotal concept of "undue" infringement upon managerial responsibilities, under *Borough of Ellwood City* and *City of Philadelphia*, inherently implicates matters of degree, thus requiring a comparison (or a weighing or balancing) of the relative strength of the respective, competing interests involved. *Cf. Denver Firefighters*, 292 P.3d at 1107 (categorizing this Court's *Borough of Ellwood City* decision as establishing a "court-developed balancing test," consistent with the litmus employed by the majority of courts from other jurisdictions).

merits review into the excess-of-powers prong of narrow-certiorari review.[6] Quite simply, per the governing precedent, the judiciary is called upon to render scope-of-bargaining determinations as a component of narrow-certiorari review of interest arbitration awards under Act 111. *See supra note* 6.[7] I do not believe that it serves the interests of justice to attempt to downplay the fact-specific nature of these inquiries, even as rough compensation for having already determined that reviewing courts must engage the subject matter in the first instance.

In terms of the majority's suggestion that I envision narrow certiorari review as designed to redress mainly the "rogue arbitration award," Majority Opinion, *slip op.* at 28, in fact, I do regard this as a fair (albeit abstract) depiction of the nature and appropriate extent of the judicial review. From my perspective, the review should

---

[6] *See, e.g.*, *PSP v PSTA (Betancourt)*, 540 Pa. 66, 79, 656 A.2d 83, 90 (1995) (indicating that an interest arbitration award "must encompass only terms and conditions of employment and may not address issues outside that realm," and extending narrow certiorari review to this line of challenges); *Twp. of Moon v. Police Officers of Twp. of Moon*, 508 Pa. 495, 500, 498 A.2d 1305, 1307 (1985) (relying upon the excess-of-powers rationale from *In re Washington Arbitration Case*, 436 Pa. 168, 259 A.2d 437 (1969), as laying the groundwork for judicial review of whether arbitrators had the authority to modify a preexisting residency); *Washington Arbitration Case*, 436 Pa. at 176-77, 259 A.2d at 442 (explaining that the Court was "quite frankly reading into [Act 111] the requirement that the scope of [a] submission to the arbitrators be limited to conflicts over legitimate *terms and conditions of employment*" (emphasis added)). *See generally City of Phila.*, 606 Pa. at 464, 999 A.2d at 565 (highlighting that the above line of decisions exemplify that "the assertion that an award concerns matters that are not subject to the right of collective bargaining under the Act implicates review under narrow certiorari as raising an excess of powers claim").

[7] Parenthetically, it may be that such review serves to alleviate non-delegation concerns, since for arbitrators to outright decide pure matters of managerial policy could be tantamount to performing a legislative function, *see generally Municipality of Anchorage v. Anchorage Police Dep't Emps. Ass'n*, 839 P.2d 1080 (Alaska 1992) (addressing one such non-delegation challenge), and there appears to be little guidance within Act 111 to channel such policy-centered decision-making.

indeed be greatly limited in scope, with doubts to be resolved in favor of arbitrability, as consistently as possible with the explicit legislative specification within Act 111. *Cf. Cnty. of Allegheny v. Allegheny Cnty. Prison Emps. Indep. Union*, 476 Pa. 27, 31-32, 381 A.2d 849, 851 (1977) (explaining, albeit in the context of grievance arbitration, that – in light of the strong public policy favoring arbitration – where an arbitrator has found in favor of arbitrability, "a reviewing court should be slow indeed to disagree"). Again, my main point of difference with the majority concerns whether we are truly capable of erasing the factual dynamic from what appear, very evidently, to be fact-based considerations.[8]

---

[8] The majority does concede that some fact-based assessment remains necessary even as to subjects which have been held to be bargainable, as it posits that a shift-complement greater than or equal to the size of the firefighting force could be judicially disapproved as implicating the size of the overall force. *See* Majority Opinion, *slip. op.* at 29. Notably, by focusing only on this one extreme example, the majority avoids the question of whether a required shift size of, say, fifty percent of the force, would have a similar effect. It also simplifies the issue by casting it solely in terms of an effect on force size, whereas in reality, other managerial factors such as pension funding may be implicated, as demonstrated by the present case.

To the degree the majority references *Moon Township v. Police Officers of Moon Township*, 508 Pa. 495, 498 A.2d 1305 (1985), for the position that fact-based assessments are unnecessary once a categorical rule is established, *see* Majority Opinion, *slip op.* at 25-26, I would observe that *Moon Township* involved a qualitatively different type of factor than those at issue in this case. Residence within or outside a hiring municipality is binary in nature; as such, it is the type of factor that lends itself well to a categorical rule – and, indeed, the *Moon Township* Court did not support its holding by reference to an evidentiary record. *See Moon Township*, 508 Pa. at 510-11, 498 A.2d at 1312-13. Here, the topic is more complex, and thus more fact-sensitive. For example, and as previously noted, the Court's present holding does little to illuminate the question of when the mandated minimum firefighting complement becomes large enough to impact upon the total size of the firefighting force; or under what circumstances it will unduly impede the municipality's ability to meet its pension obligations. Our Court is not well positioned to know where these cut-off numbers lie absent evidentiary development in particular cases going forward.

In summary, I find that the City's fiscal crisis and the role of employee benefits have relevance to the outcome of this appeal, but the arbitrators nevertheless grounded their award in a rational, fact-based balancing of employees' safety concerns, so as to alleviate the potential excess-of-powers concerns. Thus, I concur with the majority's holding.

Justice Donohue joins this concurring opinion.