DETROIT POLICE OFFICERS ASSOCIATION v CITY OF DETROIT

Docket No. 73718. Submitted April 5, 1984, at Detroit.—Decided May 21, 1984. Leave to appeal applied for.

Plaintiff, Detroit Police Officers Association, filed a request for arbitration proceedings in a dispute with defendant, City of Detroit, regarding whether the city could order two of its police precincts to reinstate rotating shift assignments for its officers following an experimental permanent shift program conducted in those precincts pursuant to a collective-bargaining agreement between the parties. On the same day, the plaintiff brought an action in the Wayne Circuit Court alleging a prospective violation of § 13 of the statute regarding compulsory arbitration of such disputes in regard to defendant's proposed unilateral action in abrogating the permanent shift program. Both parties moved for a summary judgment. The trial court, Thomas J. Brennan, J., denied the plaintiff's motion, granted the defendant's motion, and dissolved a preliminary restraining order which had prevented the defendant from reinstating rotating shift assignments pending resolution of the arbitration proceedings. In ruling in the defendant's favor, the trial court determined that the permanent shifts were not an "existing condition of employment", and, since defendant retained the right to determine reasonable schedules of work pursuant to the collective-bargaining agreement, the court decided that the scheduling of work was not a mandatory subject of bargaining so that defendant was free to unilaterally alter the schedules. Plaintiff appeals. *Held:*

1. The permanent shift program falls under the category "hours" for purposes of the present analysis. The scheduling of shifts certainly has an impact on the hours employees work. Since the permanent shift program has a significant impact upon hours of employment it is a mandatory subject of bargaining.

2. The trial court's order granting a summary judgment for

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 48A Am Jur 2d, Labor and Labor Relations §§ 1770, 1773, 2650.

Validity and construction of statutes or ordinances providing for arbitration of labor disputes involving public employees. 68 ALR3d 885.

defendant is reversed. The plaintiff is entitled to relief as a matter of law. The trial court erred in denying plaintiff's motion for summary judgment.

3. The city violated § 13 of the compulsory arbitration statute by reverting to rotating shifts after the plaintiff had invoked the arbitration proceedings. Thus, the trial court erred in dissolving the preliminary restraining order prior to the resolution of the arbitration proceedings.

Reversed and remanded for proceedings consistent with the opinion.

1. MUNICIPAL CORPORATIONS — PUBLIC EMPLOYEES — LABOR RELATIONS — POLICE DEPARTMENTS — ARBITRATION — PRESERVING STATUS QUO.

Existing wages, hours and other conditions of employment shall not be changed by action of either party without the consent of the other during the pendency of proceedings before an arbitration panel pursuant to the statute regarding compulsory arbitration of disputes which occur between a municipality and its police and fire departments; the scheduling of shifts falls under the category of "hours" for purposes of such statutory provision (MCL 423.243; MSA 17.455[43]).

2. LABOR RELATIONS — PUBLIC EMPLOYEES — MANDATORY SUBJECTS OF BARGAINING — SCHEDULING OF SHIFTS.

The test generally applied to determine a mandatory subject of bargaining in matters of public employment is whether the matter has a significant impact upon wages, hours, or other conditions of employment; the scheduling of shifts has an impact on the hours employees work.

3. LABOR RELATIONS — MANDATORY SUBJECTS OF BARGAINING — HOURS WORKED — DAYS WORKED.

The particular hours of the day and the particular days of the week during which employees shall be required to work are subjects within the realm of wages, hours, and other terms and conditions of employment and, thus, constitute mandatory subjects of bargaining.

*Gregory, Van Lopik, Moore & Jeakle* (by *Nancy Jean Van Lopik),* for plaintiff.

*Donald Pailen,* Corporation Counsel, *Mark R. Ulicny,* Deputy Corporation Counsel, and *Frank*

*W. Jackson* and *Linda C. Ragland,* Assistants Corporation Counsel, for defendant.

Amicus Curiae:

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Theodore Sachs* and *Mary Ellen Gurewitz).*

Before: J. H. GILLIS, P.J., and T. M. BURNS and N. J. KAUFMAN,* JJ.

PER CURIAM. Plaintiff appeals as of right from the denial of its motion for summary judgment and the grant of defendant's motion for summary judgment dismissing plaintiff's complaint.

The parties agree on the operative facts. Plaintiff, the Detroit Police Officers Association (DPOA), is the exclusive collective-bargaining representative for police officers below the rank of sergeant employed by defendant, the City of Detroit. Under Article 6D of the parties' collective-bargaining agreement, the police department retained "the right to determine reasonable schedules of work". The city and DPOA signed an addendum to their collective-bargaining agreement on June 22, 1981, which provided at ¶ 20 for an experimental permanent shift program which was to begin within six months from the date of the agreement, and was to "continue for one year at which time the parties shall negotiate as to whether or not it shall continue".

Permanent shifts were instituted at two precincts on November 1, 1981. A year later, plaintiff received a letter from the chief of police dated November 1, 1982, in which the chief stated that,

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment.

pending negotiations concerning extension of the experimental shift program, as agreed to in ¶ 20 of the addendum, the permanent shift assignments would continue. By June 8, 1983, however, presumably under authority of Article 6D, the city announced that it would return to rotating shifts in those precincts on July 3, 1983, unless the DPOA could convince it to do otherwise. Negotiations held during June, 1983, apparently proved fruitless. On June 28, 1983, the DPOA filed a request for a proceeding under 1969 PA 312, as amended, MCL 423.231 *et seq.;* MSA 17.455(31) *et seq.,* which provides for compulsory arbitration of disputes which occur in police and fire departments. On the same day, this suit was filed, alleging a prospective violation of § 13 of that statute, which reads:

"During the pendency of proceedings before the arbitration panel, existing wages, hours and other conditions of employment shall not be changed by action of either party without the consent of the other but a party may so consent without prejudice to his rights or position under this act."

In ruling on motions for summary judgment made by each party, the trial court determined that the permanent shifts were not an "existing condition of employment", and, since defendant retained the right to determine reasonable schedules of work in Article 6D of the parties' main collective-bargaining agreement, the court decided that the scheduling of work was not a mandatory subject of bargaining under the statute so that defendant was free to unilaterally alter the schedules.

On appeal, plaintiff argues that the scheduling of shifts is one of the "other conditions of employ-

ment" which are mandatory subjects of bargaining which may not be unilaterally changed by action of either party during the pendency of § 13 proceedings before the arbitration panel. Thus, plaintiff contends, defendant had no authority to revert to rotating shifts once plaintiff had invoked an arbitration hearing.

As suggested in the amicus curiae brief filed by the Detroit Fire Fighters Association, we think that the issue in this case should more appropriately be analyzed as whether the scheduling of shifts constitutes "hours". When so phrased, it is apparent that the permanent shift program falls under the category "hours". Act 312 was clearly intended to supplement the public employee relations act (PERA), MCL 423.201 *et seq.;* MSA 17.455[1] *et seq. Local 1277, Metropolitan Council No 23, American Federation of State, County and Municipal Employees, AFL-CIO v Center Line,* 414 Mich 642, 652; 327 NW2d 822 (1982). Under § 15 of PERA, issues that fall into the category of "wages, hours, and other terms and conditions of employment" are deemed to be mandatory subjects of bargaining. *Id.,* citing *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44, 54-57; 214 NW2d 803 (1974). The test generally applied to determine a mandatory subject of bargaining is whether the matter has a significant impact upon wages, hours, or other conditions of employment. *Detroit v Michigan Council 25, American Federation of State, County and Municipal Employees,* 118 Mich App 211, 215; 324 NW2d 578 (1982), *lv den* 417 Mich 990 (1983). The scheduling of shifts certainly has an impact on the hours employees work.

Further support for this conclusion comes from federal case law. In general, Michigan has adopted the federal court's approach as to what constitutes

a mandatory subject of bargaining, since the phrase "wages, hours, and other terms and conditions of employment" is taken verbatim from the National Labor Relations Act. *Center Line, supra,* p 653. The United States Supreme Court long ago settled this point:

"Contrary to the Court of Appeals, we think that the particular hours of the day and the particular days of the week during which employees shall be required to work are subjects well within the realm of 'wages, hours, and other terms and conditions of employment' about which employers and unions must bargain." *Local Union No 189, Amalgamated Meat Cutters & Butcher Workmen of North America, AFL-CIO v Jewel Tea Co, Inc,* 381 US 676, 691; 85 S Ct 1596; 14 L Ed 2d 640 (1965).

More recently, the Eighth Circuit Court of Appeals ruled in *American Oil Co v National Labor Relations Board,* 602 F2d 184, 186 (1979), that revision of a simplified work schedule fell within the category of "hours" so as to be a mandatory subject of bargaining.

Since we conclude that the permanent shift program was a mandatory subject of bargaining, we must reverse the trial court's order granting summary judgment for defendant based on GCR 1963, 117.2(1) and (3). Plaintiff not only stated a claim upon which relief may be granted, but, since there appear to be no factual issues, we find that plaintiff is entitled to relief as a matter of law and that the trial court also erred in denying plaintiff's motion for summary judgment. The city violated § 13 by reverting to rotating shifts after plaintiff had invoked the arbitration proceedings. Thus the trial court also erred in dissolving the preliminary restraining order which was to prevent defendant

from reinstating rotating shift assignments pending resolution of the arbitration proceedings.

We do not fault the city's actions; the record indicates that it made every effort to cooperate with plaintiff concerning the experimental shift program. Nor do we dispute the city's scheduling rights under Article 6. Indeed, it was presumably under authority of Article 6 that defendant extended the permanent shift program while negotiations were being held on the program. We hold only that, once plaintiff initiated arbitration proceedings pursuant to the compulsory arbitration statute, defendant was precluded by § 13 of that statute from unilaterally abrogating the permanent shift program which was still in effect when plaintiff demanded arbitration. The direct effect of § 13 is to preserve the status quo pending arbitration proceedings, and to prevent unilateral action such as defendant proposed in this case.

Reversed and remanded for proceedings consistent with this opinion.