**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JULY 23, 2008

DETROIT FIRE FIGHTERS
ASSOCIATION IAFF LOCAL 344,

    Plaintiff-Appellee,

v

No. 131463

CITY OF DETROIT,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE COURT

YOUNG, J.

At issue in this public labor law dispute between plaintiff Detroit Fire Fighters Association and defendant city of Detroit is whether the circuit court properly issued a preliminary injunction to prevent the implementation of defendant's proposed layoff and restructuring plan where plaintiff contends that the plan violates the "status quo" provision of 1969 PA 312 (Act 312), MCL 423.243, by, among other things, jeopardizing the safety of the remaining firefighters. We conclude that the injunction was erroneously entered.

Where a party seeks a preliminary injunction to prevent an alleged status quo violation, a two-step process is required. First, the moving party must satisfy

the traditional four-part test that is prerequisite for issuance of any preliminary injunction. Second, if the preliminary injunction test is met and the injunction is granted, the circuit court must promptly resolve the merits of the status quo claim. Pursuant to MCR 3.310(A)(5), if a preliminary injunction is granted, a "trial of the action on the merits must be held within 6 months after the injunction is granted, unless good cause is shown or the parties stipulate to a longer period."

The status quo provision of Act 312 prevents either party from altering, without consent, "existing wages, hours, or other conditions of employment," which concern mandatory subjects of bargaining, while Act 312 arbitration is pending. The status quo provision does not prevent parties from exercising their contractual rights if they do not alter an existing wage, hour, or other condition of employment. In this case, it is defendant's implementation of its restructuring and layoff plan that is at issue. Plaintiff claims that it is a change in "existing . . . conditions of employment" because it will jeopardize firefighter safety, which our precedent treats as a "condition of employment" and a mandatory subject of bargaining. Defendant, on the other hand, argues that it has the contractual right to lay off firefighters. Thus, in order for the status quo provision to be violated in this case, it must be determined that the restructuring and layoff plan actually alters a condition of employment, namely firefighter safety.

The question is what standard a circuit court must apply in order for it to determine that an employer's challenged action actually violates the status quo provision by altering this condition of employment. The Court of Appeals in *Oak*

2

*Park Pub Safety Officers Ass'n v Oak Park*[1] recently adopted the standard that a staffing proposal must be "inextricably intertwined with safety" to be a mandatory subject of bargaining. We adopt this standard for circuit court review of the type of status quo violation claim presented here. A circuit court must conclude that the employer's challenged plan is so "inextricably intertwined with safety" that its implementation would impermissibly alter the status quo by altering this "condition" of employment. The circuit court must make thorough factual findings supporting such a conclusion.

Here, not only did the circuit court fail to resolve the safety claim on the merits, it entered what amounted to a permanent injunction without applying the traditional injunctive standards. Thus, we hold that the circuit court erroneously granted injunctive relief and the Court of Appeals erroneously affirmed that decision.

Accordingly, we reverse the Court of Appeals, vacate the preliminary injunction entered by the circuit court, and remand for further proceedings consistent with this decision.

### FACTS AND PROCEDURAL HISTORY

Plaintiff is the exclusive bargaining representative of eligible Detroit Fire Department (DFD) employees. Defendant is the employer. Both are parties to a collective bargaining agreement (CBA) that took effect in 1998 and expired on

---

[1] 277 Mich App 317, 330; 745 NW2d 527 (2007).

3

June 30, 2001. Until a new agreement is forged in the Act 312 arbitration, the parties continue to operate under the old CBA. That CBA states in pertinent part at Article 2.D that

> [t]he City reserves the right to lay off personnel for lack of work or funds; or for the occurrence of conditions beyond the control of the Department; or when such continuation of work would be wasteful and unproductive . . . .

In Article 14, the parties agreed that

> [w]ages, hours and conditions of employment legally in effect on the effective date of this agreement, shall, except as improved herein, be maintained during the term of this Agreement.
>
> It is not the intent of this Article to restrict, interfere with, prevent or hinder the City from carrying out its duties and responsibilities to the public well being, by way of illustration, but not limitation, those rights, duties and responsibilities enumerated in Article 2 and the Purpose and Intent clause hereof, subject to the City's obligations under PERA [public employment relations act] and other laws.

After the CBA expired in 2001, the parties were unable to agree to a new contract. In December 2002, plaintiff invoked compulsory arbitration under Act 312 to create a successor agreement. Act 312 is meant to provide an "alternate, expeditious, effective, and binding" arbitration process.[2] Unless otherwise agreed by the parties, Act 312 requires the arbitrator to call a hearing within 15 days of

---

[2] Section 1 of Act 312 provides, in pertinent part: "It is the public policy of this state that in public police and fire departments, where the right of employees to strike is by law prohibited, it is requisite to the high morale of such employees and the efficient operation of such departments to afford an *alternate, expeditious, effective and binding procedure for the resolution of disputes* . . . ." MCL 423.231 (emphasis added).

4

being appointed,[3] conclude the hearing within 30 days of its commencement,[4] and issue a written opinion within 30 days of the conclusion of the hearing.[5] Here, the parties waived the time limitations that Act 312 imposes on the arbitration process. As a result, the "expeditious" Act 312 arbitration process is still pending after more than five years.

Defendant experienced serious budget shortfalls during the ongoing Act 312 arbitration. These difficult financial circumstances affected the operations of the DFD, leading defendant to implement a restructuring plan and a round of layoffs, effective July 1, 2005. Unfortunately, the budget problems persisted, and defendant announced, in September 2005, an additional plan to restructure the DFD. Under this plan, defendant proposed to lay off 65 firefighters, demote 10 battalion chiefs, and reduce the number of battalions from eight to five. The plan reassigned the battalion chief's duties at "garden variety fires" to the senior officer at the scene, and deactivated five engine and ladder companies.

Plaintiff filed suit in the Wayne Circuit Court on September 12, 2005, seeking declaratory and injunctive relief to stop the September 2005 reorganization plan from going into effect while the Act 312 arbitration was pending. Plaintiff argued that unilateral implementation of the restructuring plan

---

[3] MCL 423.236.

[4] *Id.*

[5] MCL 423.238.

5

violated the status quo provision of Act 312 because it required unilateral alteration of minimum staffing, job duties, seniority, parity, and emergency medical service requirements, all of which affected both firefighter safety and mandatory subjects of bargaining.

The circuit court held hearings beginning in late September, and granted plaintiff's request for a preliminary injunction on October 17, 2005. The court found that there were issues of fact concerning whether the layoffs would have an impact on the safety of the firefighters—a mandatory subject of bargaining under this Court's decision in *Local 1277, Metropolitan Council No. 23, AFSCME, AFL-CIO v City of Center Line*[6] (*Center Line II*).

The circuit judge sent the case to the assigned Act 312 arbitrator, Michael P. Long, to decide the safety issue and render his decision by October 27, 2005, at which time the circuit judge would determine if the preliminary injunction would remain in place. Although he held hearings, the arbitrator responded to the circuit court in an October 27, 2005, opinion stating that he was "not able to make any well reasoned determination as to the resolution of this dispute." Arbitrator Long indicated that he lacked jurisdiction to decide the safety issue, observing that "[t]he normal channels were not followed regarding reference of the matter to [Act] 312 arbitration." He sent the case back to the circuit court and

---

[6] 414 Mich 642; 327 NW2d 822 (1982).

6

recommended that the circuit court order the parties to mediation while keeping the injunction in place until the mediation process concluded.

The circuit court again granted a preliminary injunction in an October 31, 2005, order following another hearing. At this hearing the court reviewed its earlier statements and conceded:

> I do want to say for the record after reading the transcript of the previous hearing of the 17th, that I felt that my choice of words was inapt because it sounded like I was making a determination that there was an impact. That is not my place to do that.

However, the circuit judge clarified, "I find that there's a serious question of fact as to whether or not [the restructuring plan] would have an impact on fire fighters' safety, or indeed upon working conditions or working hours." Relying on *Center Line II* and *Detroit Police Officers Ass'n v Detroit*,[7] the court found that the reorganization and layoff plan "may implicate mandatory provisions of collective bargaining, namely the impact on [sic] the Plan on the hours and conditions of employment (including the safety) of the members of the plaintiff." The preliminary injunction order enjoined defendant from eliminating the battalion chiefs, eliminating the firefighting companies, and laying off the firefighters. It also ordered the parties to take all necessary steps to have the matter brought before an Act 312 panel to determine the factual questions surrounding the safety

---

[7] 135 Mich App 660; 354 NW2d 297 (1984), vacated 419 Mich 915 (1984).

7

issues.  The order maintained the injunction until the issuance of a final and binding Act 312 award.

The Court of Appeals affirmed the circuit court in a published decision.[8] Observing that the parties had a duty under PERA to collectively bargain about mandatory subjects of bargaining and that layoff decisions are not mandatory subjects, the panel relied on this Court's decision in *Center Line II* to hold that "where, as here, proposed layoffs and restructuring may impact the safety of working conditions for firefighters, those proposals are mandatory subjects of bargaining."[9] The panel agreed with the circuit court's finding that "the evidence established 'serious issues of fact' as to whether the proposed changes would impact safety, working conditions and working hours," and as a result "the proposed changes were subjects of mandatory bargaining, and defendant could not therefore make these unilateral alterations while the parties are engaged in compulsory arbitration."[10] It disagreed with defendant's argument that injunctive relief was inappropriate because the terms of the CBA permitted defendant to carry out the restructuring plan.

---

[8] *Detroit Fire Fighters Ass'n v Detroit,* 271 Mich App 457; 722 NW2d 705 (2006).

[9] *Id*. at 461.

[10] *Id*. at 463.

Defendant filed an application for leave to appeal with this Court. This Court granted leave to appeal.[11] Following oral arguments, this Court ordered supplemental briefing,[12] and subsequently ordered reargument.[13]

## STANDARD OF REVIEW

This Court reviews a trial court's grant or denial of a temporary injunction for abuse of discretion.[14] There is an abuse of discretion when the trial court's decision falls outside the range of principled outcomes.[15] A question of statutory

---

[11] 477 Mich 927 (2006). The grant order asked the parties to brief "whether the defendant may implement the restructuring plan, or lay off firefighters, before coming to an agreement with the plaintiff about the impact of those actions."

[12] 478 Mich 1201 (2007). In this order, we asked the parties to address (1) whether *Metropolitan Council No 23, Local 1277, AFSCME, AFL-CIO v Center Line*, 78 Mich App 281; 259 NW2d 460 (1977) (*Center Line I*), correctly held that jurisdiction to enforce § 13 of Act 312, MCL 423.243, resides in the circuit court, and (2) whether the Michigan Employment Relations Commission has primary jurisdiction to enforce § 13, see *Travelers Ins Co v Detroit Edison*, 465 Mich 185; 631 NW2d 733 (2001). Given our resolution of this case, we do not reach the issues we asked the parties to address on reargument.

[13] 480 Mich 880 (2007).

[14] *Michigan Coalition of State Employee Unions v Civil Service Comm*, 465 Mich 212, 217; 634 NW2d 692 (2001).

[15] *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

9

interpretation is a question of law that we review de novo.[16]  Finally, issues of contract interpretation are also questions of law reviewed de novo.[17]

ANALYSIS

Public labor relations in Michigan are governed by PERA.  One of PERA's primary purposes "is to resolve labor-management strife through collective bargaining."[18]    Under PERA a public labor union may not strike when disagreements arise in the collective bargaining process.[19]  Because public sector labor unions in Michigan lack the right to strike, they lack a significant tool to leverage their bargaining position.

By its own terms, Act 312 is "supplementary" to PERA, which was enacted over 20 years earlier.[20]  Act 312 was intended, in the specific context of police and firefighter unions, to redress the imbalance in bargaining power created by the prohibition of strikes, and to preclude the possibility of an illegal strike by these

---

[16] *Costa v Community Emergency Med Services*, 475 Mich 403, 408; 716 NW2d 236 (2006).

[17] *Sweebe v Sweebe*, 474 Mich 151, 154; 712 NW2d 708 (2006).

[18] *Port Huron Ed Ass'n v Port Huron Area School Dist*, 452 Mich 309, 311; 550 NW2d 228 (1996).

[19] MCL 423.202.

[20] MCL 423.244 ("This act shall be deemed as supplementary to Act No. 336 of the Public Acts of 1947, as amended, being sections 423.201 to 423.216 of the Compiled Laws of 1948, and does not amend or repeal any of its provisions; but any provisions thereof requiring fact-finding procedures shall be inapplicable to disputes subject to arbitration under this act.").

unions that provide vital public services, namely police and fire protection.  As

Justice Coleman observed:

> When policemen engage in a strike, the community becomes immediately endangered by the withdrawal of their services. Likewise, our case law has often focused on the fact that fire fighters have a distinct and crucial employment relationship with a public employer.[21]

Thus,

> [u]nder Act 312, if the public employer and the police offers' or fire fighters' bargaining unit have not reached an agreement concerning a mandatory subject of bargaining, and mediation proves unsuccessful, either party may initiate binding arbitration in order to avert a strike.[22]

The status quo provision of Act 312 states that

> [d]uring the pendency of proceedings before the arbitration panel, existing wages, hours and other conditions of employment shall not be changed by action of either party without the consent of the other but a party may so consent without prejudice to his rights or position under this act.[23]

---

[21] *Dearborn Fire Fighters*, 394 Mich at 279 (opinion of Coleman, J.).  In *Dearborn Fire Fighters*, with three justices not participating, the remaining four justices considered the constitutionality of Act 312.  Justice Levin and Chief Justice Kavanagh held that the act was unconstitutional as an unlawful delegation of legislative power.  Justice Coleman held the statute constitutional in its entirety.  Justice Williams held the statute constitutional on the facts of the case.  With the members of this Court evenly split, the Court of Appeals decision upholding the constitutionality of Act 312 was affirmed.  The constitutionality of Act 312 was again considered and upheld by a majority of this Court in *Detroit v Detroit Police Officers Ass'n*, 408 Mich 410; 294 NW2d 68 (1980), and *Center Line II*.

[22] *Dearborn Fire Fighters*, 394 Mich at 280 (opinion of Coleman, J.).

[23] MCL 423.243.

11

Recalling the delicate balance of bargaining power our labor statutes seek to preserve in police and firefighter labor disputes, this provision was intended to prevent either party from gaining unfair leverage during the pendency of Act 312 interest arbitration.

Under the status quo provision, neither party without consent can alter "existing wages, hours, and other conditions of employment" while Act 312 arbitration is pending. We observed in *Center Line II* that safety is a condition of employment and, as such, a mandatory subject of bargaining.[24] Consequently, the

---

[24] See *Center Line II*, 414 Mich at 661-664. See also, e.g., *Manistee v Manistee Fire Fighters Ass'n, Local 645, IAFF*, 174 Mich App 118, 122; 435 NW2d 778 (1989). In *Center Line II*, one of the central issues was the scope of an Act 312 panel's authority. This Court interpreted Act 312 in the context of PERA's distinction between mandatory and permissive subjects of bargaining, observing that "[w]hile Act 312 does not specifically delineate the scope of the arbitration panel's authority, it can be inferred from an analysis which considers [PERA] . . . and Act 312 together." *Id*. at 651-652. We held that "[g]iven the fact that Act 312 complements PERA and that under § 15 of PERA the duty to bargain only extends to mandatory subjects, . . . the arbitration panel can only compel agreement as to mandatory subjects." *Id*. at 654. Thus, we concluded that the Act 312 panel in *Center Line II* exceeded the scope of its authority when it compelled the parties to accept a layoff provision as part of a new labor contract because the layoff clause, which provided that police officer layoffs for lack of funds could only be made in conjunction with layoffs and cutbacks in other departments, fell within the scope of management prerogative and was outside the realm of mandatory subjects of bargaining. However, *Center Line II* cautioned that "while the initial decision to lay off is not a mandatory subject of bargaining, and therefore cannot be compelled in an arbitration award, it is clear that there is a duty to bargain over the *impact* of that decision." *Id*. at 661. The impact of the decision to lay off, according to *Center Line II*, might implicate a mandatory subject of bargaining that triggers the duty to collectively bargain.

(continued . . .)

12

status quo provision prohibits changes to an existing condition of employment such as safety during the pendency of Act 312 arbitration.

Of chief importance in a case involving an alleged status quo violation is whether an employer's restructuring and layoff plan alters a condition of employment such as safety. The Court of Appeals recently held in *Oak Park* that where a union seeks to compel Act 312 arbitration with respect to staffing decisions, it must demonstrate that those decisions are "inextricably intertwined with safety" to constitute a mandatory subject of bargaining.[25] If it does not, then the employer cannot be compelled to arbitrate the staffing decision under Act 312. The *Oak Park* panel rejected as "untenable" the union's proposed alternative standard that "as long as a staffing decision *arguably* affects, concerns, or relates to safety—whether the effect be minimal, insignificant, or unjustifiable—the issue of staffing is a condition of employment that is subject to mandatory arbitration."[26] It reasoned:

> The standards implemented by the hearing referee and MERC in this case are consistent with the requirement that only those

(. . . continued)

In this case, both parties appear to concede that, consistent with *Center Line II*, defendant retains the prerogative to lay off firefighters. However, plaintiff argues that the *impact* of the restructuring plan, which includes layoffs, implicates a mandatory subject of bargaining because it affects firefighter safety, a "condition of employment" that should not be altered during Act 312 arbitration proceedings.

[25] *Oak Park*, 277 Mich App at 329-330. See also *Trenton v Trenton Fire Fighters Union, Local 2701, IAFF*, 166 Mich App 285; 420 NW2d 188 (1988).

[26] *Id*. at 326.

matters that have a significant impact on conditions of employment are subject to mandatory bargaining. The impact of a staffing decision on working conditions, including safety, must be proven to be significant, not merely to *arguably* exist . . . . To adopt the union's position would be tantamount to requirement that most, if not all, minimum staffing proposals—particularly with regard to [public safety officers], police officers, firefighters, and others engaged in high-risk professions—be subject to mandatory bargaining, given that a reduction in the number of these employees will arguably have some—albeit minimal—impact on safety. Such a conclusion would have the effect of invading the city's prerogative to determine the size and scope of its business, including the services it will provide. We decline to reach such a conclusion.[27]

Although *Oak Park* addressed a different legal issue and not the status quo issue presented here, we find the logic and standard endorsed by *Oak Park* compelling in this context.[28] A hasty or tentative finding that a restructuring and layoff plan violates the status quo would "invad[e] the city's prerogative to determine the size and scope of its business, including the services it will provide,"[29] just as surely as if every employer's staffing decision that merely *arguably* affected safety conditions was subject to mandatory bargaining. Thus, whether a layoff and restructuring plan jeopardizes employee safety requires a

---

[27] *Id*. at 329-330 (citations omitted).

[28] In *Oak Park*, the city filed an unfair labor practice charge against the union, alleging that the union unlawfully demanded bargaining over permissive bargaining subjects, such as a safety/staffing provision, in an Act 312 arbitration. The hearing referee and the MERC panel ruled in favor of the city, deciding that the union breached its duty to bargain in good faith. The Court of Appeals affirmed in a published opinion per curiam.

[29] *Id*. at 330.

careful examination of the plan details and a finding that the plan is "inextricably intertwined with safety" such that it would have a "significant impact" on safety.[30]

The central problem with the circuit court's decision in this case, and by extension the Court of Appeals decision to affirm it, is that it only found that defendant's layoff and restructuring plan "may" implicate a mandatory subject of bargaining and that this case "raised questions of fact" about firefighter safety. After issuing the preliminary injunction, the circuit court never conclusively determined that the plan unlawfully altered the status quo. Indeed, the circuit court expressly stated that it was not deciding the merits of plaintiff's claim. And, when the circuit court attempted to induce Arbitrator Long to resolve the safety dispute, he declined to do so.

Given the magnitude of a decision to restrain an employer's exercise of a management prerogative, this level of uncertainty in a circuit court ruling is untenable. By its terms, this injunction was to remain in place until the conclusion of Act 312 arbitration, but a determination on the merits would never have been made. On a practical level, what was termed by the circuit court a "preliminary injunction" became a de facto permanent injunction, without resolving the merits of the alleged status quo violation. Moreover, the injunction was issued where the traditional elements required for injunctive relief had not been established. Specifically, although the circuit court found that there were "issues of fact"

---

[30] *Id.*

regarding the safety issue, it did not find that there was a likelihood of success on the merits in this regard, nor did the court conclude that the firefighters would suffer irreparable harm.

Where a party seeks a preliminary injunction to prevent an alleged status quo violation as in this case, the party must satisfy a two-step process. First, it bears the burden of proving that the traditional four elements favor the issuance of a preliminary injunction. The trial court must evaluate whether (1) the moving party made the required demonstration of irreparable harm, (2) the harm to the applicant absent such an injunction outweighs the harm it would cause to the adverse party, (3) the moving party showed that it is likely to prevail on the merits, and (4) there will be harm to the public interest if an injunction is issued.[31]

Second, if a trial court determines that the standards for a preliminary injunction have been met and chooses to issue an injunction, it must promptly

_____

[31] *Michigan State Employees Ass'n v Dep't of Mental Health*, 421 Mich 152, 157-158; 365 NW2d 93 (1984). See also *Pontiac Fire Fighters v Pontiac*, ___ Mich ___, ___; ___ NW2d ___ (Docket No. 132916, decided July 23, 2008). We disagree with and overrule as inconsistent with this Court's decision the Court of Appeals holding in *Detroit Police Officers Ass'n v Detroit*, 142 Mich App 248; 369 NW2d 480 (1985), that the traditional injunctive standards do not apply when issuing an injunction to remedy a violation of the status quo provision. This Court has consistently held that it is "basically contrary to public policy in this State to issue injunctions in labor disputes absent a showing of violence, irreparable injury, or breach of the peace." *Holland School Dist v Holland Ed Ass'n*, 380 Mich 314, 326; 157 NW2d 206 (1968); see also *Michigan State Employees Ass'n*, 421 Mich at 164-165; *Michigan Law Enforcement Union, Teamsters Local 129 v Highland Park*, 422 Mich 945 n 1 (1985). An injunction concerning a dispute about the status quo provision should be treated no differently.

decide the merits of the status quo claim. MCR 3.310(A) governs preliminary injunctions. Subsection 5 requires that "[i]f a preliminary injunction is granted . . . [t]he trial of the action on the merits must be held within 6 months after the injunction is granted, unless good cause is shown or the parties stipulate to a longer period."[32]

Therefore, on remand, the circuit court must engage in this two-step inquiry. First, it must determine whether plaintiff has satisfied the traditional four-part test for a preliminary injunction, particularly that plaintiff has demonstrated a likelihood of success on the merits that the plan is "inextricably intertwined with safety" and made a showing of irreparable harm. Second, if the circuit court issues a preliminary injunction there must be a determination on the merits that the challenged employer action is "inextricably intertwined with safety" as that standard was articulated in *Oak Park*. It must do more than conclude that the challenged employer action *arguably* affects safety. To that end, any decision by the circuit court that the employer action is "inextricably intertwined with safety" must be conclusive and supported by specific, detailed findings of fact.

---

[32] However, MCR 3.310(A)(2) permits the court to accelerate the process by advancing and consolidating the trial of the action on the merits with the hearing on the motion. In either case, the merits of the claim cannot remain unresolved.

17

CONCLUSION

We hold that the circuit court erred when it issued the preliminary injunction preventing the implementation of the restructuring plan. The circuit court issued what amounted to a permanent injunction where the underlying merits of the alleged status quo violation would never be resolved, contrary to the requirements of MCR 3.310(A)(5). We further hold that, when a safety claim is alleged, an employer's challenged action alters the status quo during the pendency of an Act 312 arbitration only if the action is so "inextricably intertwined with safety" that the action would alter a "condition of employment."

We reverse the Court of Appeals judgment, vacate the preliminary injunction entered by the circuit court, and remand the case to the circuit court for further proceedings consistent with this opinion.

Robert P. Young, Jr.
Clifford W. Taylor
Elizabeth A. Weaver
Maura D. Corrigan
Stephen J. Markman


Cavanagh, J. I concur in the result only.

Michael F. Cavanagh

18

S T A T E   O F   M I C H I G A N

SUPREME COURT

DETROIT FIRE FIGHTERS
ASSOCIATION IAFF LOCAL 344,

      Plaintiff-Appellee,

v

No. 131463

CITY OF DETROIT,

      Defendant-Appellant.

_____

KELLY, J. (*concurring in part and dissenting in part*).

I concur in the majority's decision to remand this case to the circuit court for a clear determination of whether the city of Detroit's reorganization plan violates § 13 of Act 312. The remand is necessary because the circuit court stated its conclusions in terms that are too tentative.

The circuit court must determine whether the union is likely to succeed on the merits of its claim that a status quo violation occurred. If it finds such a likelihood, it may presume that the union will be irreparably harmed should the violation not be enjoined for the duration of the arbitration proceedings. Because I

have reached this conclusion, it follows that I would not overrule *Detroit Police Officers Ass'n v Detroit.*[1]

In *Detroit POA*, the Court of Appeals held that the trial court was not required to make a finding of irreparable harm or inadequate remedy at law before enjoining violations of § 13 of Act 312.[2]  It relied on the interpretation by federal courts of a similar status quo provision in the federal Railway Labor Act (RLA).[3] That provision states in relevant part that "rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon  . . . by the Mediation Board . . . ."[4]

Federal courts, including the United States Supreme Court, have held that this provision allows injunctive enforcement by the district courts without a showing of irreparable harm in cases of major disputes.[5]  Federal courts forgo the

---

[1] *Detroit Police Officers Ass'n v Detroit*, 142 Mich App 248; 369 NW2d 480 (1985) (*Detroit POA*).

[2] *Id*. at 253.

[3] 45 USC 151 *et seq.*

[4] 45 USC 156.

[5] Major disputes involve disagreements over future contractual rights or changes in the terms in existing agreements. The parties are required to maintain the status quo during a lengthy bargaining and mediation process. *ABX Air, Inc v Airline Professionals Ass'n of the Int'l Brotherhood of Teamsters, Local Union No 1224, AFL-CIO*, 266 F3d 392, 396 (CA 6, 2001). The United States Supreme Court authorized the use of injunctive relief to enforce the status quo provision of the RLA for major disputes. *Consolidated Rail Corp v R Labor Executives' Ass'n,* 491 US 299, 303; 109 S Ct 2477; 105 L Ed 2d 250 (1989). In *Detroit & Toledo*
(continued . . .)

traditional requirement of irreparable harm because the plain statutory language does not require such a showing and irreparable harm is presumed in cases involving major disputes.[6]

The majority argues that issuing an injunction without a showing of irreparable harm goes against the public policy of this state and that a status quo violation should not receive special treatment.[7] However, only one of the cases cited by the majority involves a violation of § 13 of Act 312. In its peremptory order in that case, the Court did not consider the public policy concerns codified in Act 312.[8] And when the Court had an opportunity to consider whether the holding

---

(. . . continued)
*Shore Line R Co v United Transportation Union*, 396 US 142, 150; 90 S Ct 294; 24 L Ed 2d 325 (1969), the Supreme Court explained its rationale: "[D]elaying the time when the parties can resort to self-help provides time for tempers to cool, helps create an atmosphere in which rational bargaining can occur, and permits the forces of public opinion to be mobilized in favor of a settlement without a strike or lockout."

[6] A showing of irreparable injury is not required in light of the public interest in settlement of labor disputes and the fact that the duty to maintain the status quo "contains no qualification to the effect that the carrier has no obligation to [maintain the status quo] unless irreparable injury would otherwise result." *Southern R Co v Brotherhood of Locomotive Firemen and Enginemen,* 337 F2d 127, 133-34 (DC Cir, 1964).

[7] *Ante* at 16 n 31.

[8] See *Michigan Law Enforcement Union, Teamsters Local 129 v Highland Park*, 422 Mich 945 n 1 (1985).

of *Detroit POA* contradicted the public policy of this state, it denied leave to appeal.[9]

It is an accepted rule of statutory construction that the Court should not impose policy choices that differ from those selected by the Legislature.[10] The majority here acknowledges the public policy concerns that occasioned the passing of Act 312: "Act 312 was intended, in the specific context of police and firefighter unions, to redress the imbalance in bargaining power created by the prohibition of strikes, and to preclude the possibility of an illegal strike by these unions that provide vital public services, namely police and fire protection."[11] These policy concerns are expressly codified in two statutes: MCL 423.231, which affords arbitration to police and firefighter unions as "an alternate, expeditious, effective and binding procedure for the resolution of disputes,"[12] and MCL 423.243, which prohibits unilateral changes in the status quo while arbitration is pending.[13]

---

[9] *Detroit Police Officers Ass'n v Detroit*, 424 Mich 894 (1986).

[10] *People v McIntire*, 461 Mich 147, 152-153; 599 NW2d 102 (1999).

[11] *Ante* at 10-11.

[12] MCL 423.231 states in relevant part: "It is *the public policy of this state* that in public police and fire departments, where the right of employees to strike is by law prohibited, it is requisite to the high morale of such employees and the efficient operation of such departments to afford *an alternate, expeditious, effective and binding procedure for the resolution of disputes . . . .*" (Emphasis added.)

[13] MCL 423.243 states: "During the pendency of proceedings before the arbitration panel, existing wages, hours and other conditions of employment shall
(continued . . .)

4

The traditional requirement of irreparable harm requires a determination that the injury cannot be repaired by means other than an injunction.[14] A unilateral change in the status quo has an obviously negative effect on a union's bargaining power. It compromises the integrity of the bargaining process. Because of the bargaining disadvantage at which unilateral changes place a union, the union is unlikely to attain a retroactive restoration of the status quo. Because a strike is the only method of maintaining bargaining power in the face of a unilateral change, Act 312 aims to prevent the resort to strikes by police and firefighters. Thus, in passing Act 312, the Legislature effectively decided that any remedy other than an injunction would be inadequate. Consequently, a status quo violation presumptively causes irreparable harm.

The Court of Appeals in *Detroit POA* did not err in concluding that no showing of irreparable harm was necessary to enjoin violations of the status quo during Act 312 arbitration. While I concur in the decision to remand this case to the circuit court, I would not require the union to show irreparable harm. Such

---

(. . . continued)
not be changed by action of either party without the consent of the other but a party may so consent without prejudice to his rights or position under this act."

[14] *Michigan Coalition of State Employee Unions v Civil Service Comm*, 465 Mich 212, 241; 634 NW2d 692 (2001) (Cavanagh, J., dissenting).

5

harm should be presumed if the court determines that the city's reorganization plan violates the status quo.[15]

Marilyn Kelly

---

[15] I believe that the most important reason for issuing an injunction for the duration of Act 312 arbitration proceedings is to protect the parties' bargaining positions. But irreparable harm should be presumed in the case of a status quo violation for another reason as well.

The majority posits that, to show a status quo violation, the union must demonstrate that the city's reorganization plan is "so 'inextricably intertwined with safety' that its implementation would impermissibly alter the status quo by altering this 'condition' of employment." *Ante* at 3. But the impact of proposed layoffs on firefighter safety was also deemed relevant to the question of irreparable harm in *Pontiac Fire Fighters v Pontiac*, ___ Mich ___, ___; ___ NW2d ___ (Docket No. 132916, decided July 23, 2008), which the majority cites for the four traditional elements of injunctive analysis. *Ante* at 16 n 31. Unlike *Pontiac*, this case involves an Act 312 arbitration, so the majority directs the circuit court to look for both irreparable harm and a status quo violation. If both these inquiries are premised on the impact of the layoffs on firefighter safety, then the majority essentially directs the circuit court to engage in a duplicative analysis.